UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **MARUCCI et al.,** | Civ. No. 2:13-4884 |
| **Plaintiffs,** | (KM)(MAH) |
| v. | **OPINION** |
| **CAWLEY & BERGMANN, LLP et al.,** | |
| **Defendants.** | |

**KEVIN MCNULTY, U.S.D.J.:**

This matter comes before the court on the motion (ECF No. 9) of the defendants, Cawley & Bergmann, LLP ("Cawley") and FFIR-ACM Opportunity Fund VI, LLC ("Fund") to dismiss the Complaint (ECF No. 1) of plaintiffs Angela and Giuseppe Marucci ("Maruccis"). The Maruccis filed this class action complaint seeking damages for alleged violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq*.[1]

For the reasons set forth below, the motion to dismiss is **denied.**

**I.   BACKGROUND**[2]

The plaintiffs, Angela and Giuseppe Marucci, bring a class action lawsuit on behalf of themselves and similarly situated consumers, within the meaning of 15 U.S.C. § 1692a(3), who received debt collection letters from defendant Cawley. (Compl. ¶¶4, 15, 28, ECF No. 1). Defendant Fund is in the business of buying and liquidating consumer debt. It has

---

[1] Class certification issues are not relevant to this motion to dismiss.
[2] The facts that follow are taken from the Complaint (ECF No. 1) and are assumed to be true for purposes of this motion only.

1

hired defendant Cawley to attempt to collect such debts by mail and telephone. (*Id.* ¶¶ 6–9, 13). Cawley and the Fund are debt collectors within the meaning of 15 U.S.C. § 1692a(6). (*Id.* ¶¶7, 9).

The Maruccis allegedly owe a debt arising from a Best Buy credit card (the "Debt"). (*Id.* ¶11). Best Buy sold the Debt to the Fund, which hired Cawley to collect it. (*Id.* ¶12). On August 13, 2012, Cawley sent the Maruccis an initial collection letter ("Letter") stating that the amount of the Debt was $1,984.37. (*Id.* ¶¶15–16, Ex. A, ECF 1-1). The Letter made no statement regarding interest; it did not disclose, for example, whether interest was accruing, the interest rate, or the portion of the total Debt that was attributable to accrued interest or other fees. (*Id.* ¶17). The Maruccis allege upon information and belief that the Debt is in fact accruing interest. They cite a collection letter from Praxis Financial Solutions, Inc., sent on October 24, 2011, which shows that as of that earlier date the amount of the debt was only $1,894.75. (*Id.* ¶18 (citing Ex. B)).

The Maruccis allege that the Cawley Letter would lead the least sophisticated consumer to believe that payment of the amount stated in the letter would satisfy the Debt, when in fact interest is accruing and the consumer may still owe additional accrued interest. (*Id.* ¶20). Thus, the Maruccis claim that by failing to disclose interest charges in the Letter, Cawley and the Fund violated (1) 15 U.S.C. § 1692e(2)(A), which prohibits falsely representing the character, amount, or legal status of the debt; and (2) 15 U.S.C. § 1692g(a)(1), which requires debt collectors to state the amount of the debt. (*Id.* ¶¶21–23).

Defendants Cawley and the Fund now move under Federal Rule of Civil Procedure 12(b)(6) to dismiss the Complaint for failure to state a claim.

## II. APPLICABLE STANDARDS

### a. Rule 12(b)(6)

Rule 12(b)(6) provides for the dismissal of a complaint, in whole or in part, if it fails to state a claim upon which relief can be granted. The defendant, as the moving party, bears the burden of showing that no claim has been stated. *Animal Science Products, Inc. v. China Minmetals Corp.*, 654 F.3d 462, 469 n. 9 (3d Cir. 2011). For the purposes of a motion to dismiss, the facts alleged in the complaint are accepted as true and all reasonable inferences are drawn in favor of the plaintiff. *N.J. Carpenters & the Trustees Thereof v. Tishman Const. Corp. of N.J.*, 760 F.3d 297, 302 (3d Cir. 2014).

Federal Rule of Procedure 8(a) does not require that a complaint contain detailed factual allegations. Nevertheless, "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Thus, the complaint's factual allegations must be sufficient to raise a plaintiff's right to relief above a speculative level, so that a claim is "plausible on its face." *Id.* at 570; *see also Umland v. PLANCO Fin. Serv., Inc.*, 542 F.3d 59, 64 (3d Cir. 2008). That facial-plausibility standard is met "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). While "[t]he plausibility standard is not akin to a 'probability requirement' . . . it asks for more than a sheer possibility." *Iqbal*, 556 U.S. at 678.

### b. FDCPA

Congress enacted the FDCPA "to eliminate abusive debt collection practices by debt collectors." 15 U.S.C. § 1692(a). To effectuate that

purpose, the Act allows for a private cause of action by debtors against debt collectors. *See* 15 U.S.C. § 1692k. "When such a suit is filed, courts within this Circuit evaluate collection letters and notices for compliance with the Act 'from the perspective of the least sophisticated debtor.'" *Smith v. Lyons, Doughty & Veldhuius, P.C.*, No. CIV.A. 07-5139, 2008 WL 2885887 at *3 (D.N.J. July 23, 2008) (quoting *Wilson v. Quadramed Corp.*, 225 F.3d 350, 354 (3d Cir. 2000) (internal quotation and citation omitted)). The Third Circuit has explained how this standard is applied:

> The basic purpose of the least-sophisticated debtor standard is to ensure that the FDCPA protects all consumers, the gullible as well as the shrewd. . . . [T]he least sophisticated debtor standard is lower than simply examining whether particular language would deceive or mislead a reasonable debtor. In other words, this standard is less demanding than one that inquires whether a particular communication would mislead or deceive a reasonable debtor. Nevertheless, the standard does not go so far as to provide solace to the willfully blind or non-observant. The debtor is still held to a quotient of reasonableness, a basic level of understanding, and a willingness to read with care, and the debt collector accordingly cannot be held liable for bizarre or idiosyncratic interpretations. For example, even the least sophisticated debtor is expected to read any notice in its entirety.

*Caprio v. Healthcare Revenue Recovery Grp., LLC*, 709 F.3d 142, 149 (3d Cir. 2013) (internal quotations and citations omitted).

Often, the parties do not dispute the actual contents of a collection letter, but the legal consequences thereof. A Rule 12(b)(6) motion may thus be a suitable vehicle for a court to decide whether the least sophisticated debtor would be deceived or misled by the debt collector's communications. *See id.* at 147 ("whether language in a collection letter contradicts or overshadows the validation notice is a question of law."); *Wilson*, 225 F.3d at 353 n.2 ("The majority of courts to have considered this question have . . . held that this determination involves a question of law."); *Smith*, 2008 WL 2885887 at *3 ("whether the least sophisticated

debtor would be misled by a particular communication is a question of law that may be resolved in a Rule 12(b)(6) motion.").

### III. ANALYSIS

#### a. Fund's liability for acts of Cawley

Defendant Fund argues that the claims against it must be dismissed because the Maruccis have not demonstrated that the Fund "exercised control over the agent's [*i.e.*, Cawley's] conduct or activities." (Def. Br. 16, ECF No. 9). Some out-of-circuit case law seems to require a showing of "control," beyond what is required under traditional rules of vicarious tort liability. If I were to agree, I might nevertheless deny the Fund's motion, because the issue is a fact-dependent one. As it happens, however, I do not agree; the Third Circuit cases suggest to me that liability may be imposed on the basis of Cawley's having acted within the scope of a principal-agent relationship.

The Third Circuit has observed that, although not many cases specifically address vicarious liability under the FDCPA, there are several "supporting the notion that an entity which itself meets the definition of 'debt collector' may be held vicariously liable for unlawful collection activities carried out by another on its behalf." *Pollice v. National Tax Funding, L.P.*, 225 F.3d 379, 404 (3d Cir. 2000) (relying on *Fox v. Citicorp Credit Services, Inc.*, 15 F.3d 1507, 1516 (9th Cir. 1994)). "The rule to be gleaned from" the FDCPA vicarious liability cases, as the Third Circuit found, is as follows:

> Federal courts that have considered the issue have held that the client of an attorney who is a 'debt collector,' as defined in § 1692a(6), *is vicariously liable* for the attorney's misconduct if the client is itself a debt collector as defined in the statute. Thus, vicarious liability under the FDCPA *will be imposed* for an attorney's violations of the FDCPA if both the attorney and the client are debt collectors as defined in § 1692a(6).

*Id.* at 404–05 (emphasis added) (internal citation and quotation omitted).

The *Pollice* Court did not confine its reasoning to the attorney-client relationship, however; its holding rested on the statute and more general conceptions of vicarious liability for the acts of an agent. Thus "[an entity]—which itself meets the definition of 'debt collector'—may be held vicariously liable for [its hired collector's] collection activity." *Id.* at 405. The *Pollice* Court found this to be "a fair result because an entity that is itself a 'debt collector'—and hence subject to the FDCPA—should bear the burden of monitoring the activities of those it enlists to collect debts on its behalf." *Id.* District courts within this circuit, citing *Pollice*, have extended liability based on traditional principles of a principal's vicarious liability for acts of its agent. *See, e.g., DeHart v. U.S. Bank, N.A. ND*, 811 F. Supp. 2d 1038, 1055 (D.N.J. 2011) ("[T]he Third Circuit has held that the principal of an agent that is acting as a debt collector can be vicariously liable for the agent's violations of the FDCPA if the principal is itself a debt collector."); *Martsolf v. JBC Legal Grp., P.C.*, No. CIV.A. 1:04-CV-1346, 2008 WL 275719 at *10–11 (M.D. Pa. Jan. 30, 2008) (imposing vicarious liability on debt collector client for the misconduct of the debt collector attorney it hired to collect the debt because they clearly "maintain an attorney-client and agent-principal relationship for the purpose of collecting debts").

In *DeHart*, for example, Chief Judge Simandle denied in part a motion to dismiss because the complaint adequately alleged "both the existence of a master-servant relationship and that the acts of [the servant] complained of by Plaintiffs occurred within the scope of that relationship." 811 F. Supp. 2d at 1047. There, notices were sent by one debt collector "on behalf of" the other. *Id.* That circumstance, combined with other facts, would have permitted "a reasonable inference . . . that [one defendant] was in an agency relationship with [the other defendant]." *Id.* And that was enough. The Court did not require any

further allegation or examination of indicia of "control" beyond the existence of the principal-agent relationship itself.

The Fund cites out-of-circuit cases requiring a showing that the principal debt collector exercised control over the agent's activities in order to impose vicarious liability under the FDCPA. *See, e.g., Clark v. Capital Credit & Collection Servs., Inc.*, 460 F.3d 1162, 1173 (9th Cir. 2006); *Nichols v. Niagara Credit Recovery, Inc.*, No. 5:12-CV-1068 MAD/TWD, 2013 WL 1899947 at *5 (N.D.N.Y. May 7, 2013); *Bodur v. Palisades Collection, LLC*, 829 F. Supp. 2d 246, 258–59 (S.D.N.Y. 2011); *Cassady v. Union Adjustment Co.*, 2008 WL 4773976 at *6 (N.D. Cal. Oct. 27, 2008). In a useful discussion, one district court within the Second Circuit analyzed those holdings and rejected them for three reasons: 1) certain cases imposing this requirement have done so "under different circumstances" (for instance, "where a party seeks to hold an attorney vicariously liable for the acts of his or her client"); 2) "claims that a principal is liable for an agent's actions normally do not require such allegations"; and 3) "the nature of an attorney-client relationship itself reflects that the client has the power to 'control' its agent in material respects if the client wishes to do so." *Okyere v. Palisades Collection, LLC*, 961 F. Supp. 2d 508, 516–17 (S.D.N.Y. 2013) (citing *Martsolf*, 2008 WL 275719 at *10–11).

That rejection of any additional "control" requirement is in keeping with the principle that statutory torts are to be interpreted in accordance with traditional tort principles of liability. In *Meyer v. Holley*, 537 U.S. 280 (2003), the Supreme Court discussed vicarious liability under the Fair Housing Act. There, a real estate corporation was held liable for discriminatory acts of its employee, a salesman. *See id.* The Court held that "when Congress creates a tort action, it legislates against a legal background of ordinary tort-related vicarious liability rules and consequently intends its legislation to incorporate those rules." *Id.* at

7

285. Surveying such common law principles, the Court found that they "ordinarily make principals or employers vicariously liable for acts of their agents or employees in the scope of their authority or employment." *Id.* Such a principal/agent relationship requires (1) that there be control, or "*the right* to direct or control"; and (2) that the parties consent to one's acting on behalf of the other. *Id.* (citing the Restatement (Second) of Agency § 1 (1957)) (emphasis added).

The Supreme Court's general approach in *Meyer* and the Third Circuit's specific holding in *Pollice* point the same way. A debt collector is responsible for "the activities of those it enlists to collect debts on its behalf." *Pollice*, 225 F.3d at 405. I therefore decline to impose an additional requirement that, to state a claim of vicarious liability under the FDCPA, the Maruccis must allege specific acts of control by the Fund over Cawley. *Id.*

The Fund, a debt collector, allegedly hired Cawley, also a debt collector, to collect a debt. That allegation supports a logical inference that the Fund had the right to control Cawley's actions, precisely the sort of principal-agent relationship to which *Meyer* referred. The complaint alleges both that Cawley sent the Letter on the Fund's behalf, and that it did so within the scope of its relationship with the Fund. (Compl. ¶¶12, 15). No more is required at the pleading stage to state a claim of vicarious liability.

### b. Violation of Section 1692g(a)(1) (Counts III, IV)

Section 1692g(a)(1) of the FDCPA requires that a debt collector "send the consumer a written notice containing the amount of the debt." That notice must be contained in either the initial communication regarding the debt, or in another communication "[w]ithin five days after the initial communication." 15 U.S.C. § 1692g(a)(1). Counts III and IV of the complaint allege that Cawley and the Fund violated this provision

because the Letter did not (1) "state that the Debt was accruing interest"; (2) provide "a breakdown of the Debt's accrued interest and other fees," as opposed to stating it as a single sum; (3) "state whether the Debt was subject to the accrual of interest or other charges"; (4) "state whether the Debt had accrued interest or other charges"; (5) "state the amount of interest and other charges that had accrued on the Debt"; or (6) "state how or when the amount of the Debt had been calculated." (Compl. ¶¶60–65, 68). Cawley and the Fund contend that Counts III and IV must be dismissed because the statutory reference to "the amount of the debt" does not explicitly require any disclosures as to the accrual of interest. (Def. Br. 8–10). Because of persuasive case law to the contrary, I disagree, and will deny this component of the motion to dismiss.

I am guided by cases such as *Smith v. Lyons*, in which Judge Rodriguez of this District held that the plaintiff had properly stated a claim under Section 1692g(a)(1) because "the [collection] letter [did] not identify the date as of which the unpaid accrued interest was calculated, and [did] not specify whether interest will continue to accrue on the unpaid principal balance." *Smith v. Lyons, Doughty & Veldhuius, P.C.*, No. 07-5139, 2008 WL 2885887 at *6 (D.N.J. July 23, 2008). Judge Rodriguez reasoned that, without an explicit disclosure of accrued and accruing interest, the least sophisticated debtor might be misled or confused as to how he or she could satisfy the debt obligation:

> This hypothetical person, who is both gullible and naive, might believe that he could pay his debt in full by remitting the sum of the principal and interest stated in the [] letter at any time after he received that letter. Such a belief would be incorrect because the total amount of the debt was and is subject to periodic adjustment by [the debt collector]. [Plaintiff] therefore states a claim for a violation of § 1692g(a)(1).

*Id.* (citing *Brown v. Card Serv. Ctr.*, 464 F.3d 450, 454 (3d Cir. 2006)). Many other cases have reached a similar conclusion. *See Miller v.*

9

*McCalla, Raymer, Padrick, Cobb, Nichols, & Clark, L.L.C.*, 214 F.3d 872, 875 (7th Cir. 2000) (holding that debt collector must "state the total amount due—interest and other charges as well as the principal"; and fashioning a "safe harbor" formula in which the accrual of interest is specifically dealt with); *Jones v. Midland Funding, LLC*, 755 F. Supp. 2d 393, 397 (D. Conn. 2010) ("I agree with the *Miller* line of cases that when a debt is accruing interest, a validation notice fails to correctly state the amount of the debt as required by § 1692g unless it discloses the fact that interest is accruing and informs the consumer of the applicable interest rate."; (surveying cases)); *Jones v. Midland Funding, LLC*, No. 3:08-CV-802 RNC, 2012 WL 1204716 at *6 (D. Conn. Apr. 11, 2012), *appeal withdrawn* (Feb. 21, 2014) (on reconsideration, adhering to the original *Jones* ruling, distinguishing new cases from other courts, and finding that a settlement offer does not protect a debt collector from liability where the collector fails to disclose whether interest is accruing on the debt); *Ivy v. Nations Recovery Ctr., Inc.*, No. 2:12-CV-037, 2012 WL 2049387 at *2 (E.D. Tenn. June 6, 2012) (finding that Plaintiff had stated a claim where a debt collector's letter "did not state whether interest was accruing and, if so, the currently-applicable interest rate"); *Curto v. Palisades Collection*, LLC, No. 07–CV–529(S), 2011 WL 5196708 at *8 (W.D.N.Y. Oct. 31, 2011) (finding that a collection letter's omission of the amount of interest owed would be misleading if the Defendants were afterward going to seek interest); *Stonecypher v. Finkelstein Kern Steinberg & Cunningham*, 2:11–cv–13, 2011 WL 3489685 at *5 (E.D. Tenn. Aug. 9, 2011) (finding that debt collector violated Section 1692g(1)(a) by omitting from the statement of the amount of the debt any indication that interest was accruing or what the applicable interest rate was); *Dragon v. I.C. System *397 Inc.*, 483 F. Supp. 2d 198, 201–03 (D. Conn. 2007) (finding that a communication violated Sections 1692g(a)(1) and 1692e(2) and (10) by not "specifically indicat[ing] the date as of

which the 'BALANCE DUE' amount was the full amount of the debt," and was "potentially misleading for the least sophisticated consumer who could readily conclude that the total amount stated as due . . . was due *at any time*, when in fact it was not and was subject to adjustment . . . on a periodic basis." (emphasis in original)); *Jackson v. Aman Collection Serv.*, No. IP 01–0100–C–T/K, 2001 WL 1708829 at *3 (S.D. Ind. Dec. 14, 2001) (finding that plaintiff stated a claim because the collection letter did not specify the date as of which the "total due" was accurate, and also because the accrual of interest was not sufficiently explained in the letter).

Other cases, including one in this District, have taken the contrary position: that the obligation to disclose "the amount of the debt" does not imply an obligation to disclose the running of interest. *See Bodine v. First Nat. Collection Bureau, Inc.*, No. CIV.A. 10-2472 MLC, 2010 WL 5149847 at *2 (D.N.J. Dec. 13, 2010) (Cooper, J.) (noting in dicta that all the FDCPA requires is that a written notice of a debt contain "the amount of the debt," and not a specific breakdown of interest and principal, and declining to follow the *Smith* holding); *Schaefer v. ARM Receivable Management, Inc.*, No. 09–11666–DJC, 2011 WL 2847768 at *5 (D. Mass. July 19, 2011) (holding that "[t]he language of the FDCPA does not require that a debt collection letter advise that the consumer's debt may increase"); *Pifko v. CCB Credit Servs.*, No. 09–CV–3057 (JS)(WDW), 2010 WL 2771832 at *3–4 (E.D.N.Y. July 7, 2010) (holding that debt collectors' only obligation is to "state the amount of the debt due," not to explain why the debt has increased; rather, it is the addition of confusing language regarding interest and other charges that may violate the FDCPA); *Adlam v. FMS*, No. 09 Civ. 9129 (SAS), 2010 WL 1328958 at *3 (S.D.N.Y. April 5, 2010) (holding that "[t]he FDCPA does not require that a debt collection letter warn a consumer that the debt may increase"); *Weiss v. Zwicker & Assocs.*, 664 F. Supp. 2d 214, 217 (E.D.N.Y. 2009)

(holding that a debt collector is not required to explain why the amount of the debt had increased as "even the most unsophisticated consumer would understand that credit card debt accrues interest"); *Goodrick v. Cavalry Portfolio Servs. LLC*, No. CIV 12-1822 PHX DGC, 2013 WL 4419321 at *2–3 (D. Ariz. Aug. 19, 2013) (holding that a loan that had been outstanding for nine years was not new to the debtor, so even least sophisticated consumer should have known it was subject to the accrual of interest, and the atypical case that a loan may be sold off and a new debt collector may not charge interest did not negate this conclusion).

The Act is debtor-oriented. What the debtor needs to know is what he or she owes. I find the *Smith* line of cases more persuasive because it better implements the statutory goal of full and fair disclosure to every debtor, even the least sophisticated one. I therefore hold that debt collectors must disclose the accrual of interest to satisfy the obligation to state "the amount of the debt."

Under that standard, Counts III and IV of the complaint state a cause of action. The Cawley Letter, as of October 24, 2012, states at the top that the "account balance" is $1,985.37. (Compl. Ex. A). There is no indication of whether interest has accrued or will continue to accrue on the balance. Farther down, the Letter offers "AFFORDABLE OPTIONS TO RESOLVE THIS ACCOUNT!" and specifies three payment options. (*Id.*). None of the payment options refer to interest. The complaint alleges that this is misleading, because interest is in fact accruing. (Compl. ¶18 (citing Ex. B)).³ And the complaint supports the inference that interest is running with a plausible factual allegation: specifically, that the

---

³   In fact, the letter received by the Maruccis, which makes no mention of interest at all, is even less informative than the one found actionable in *Smith*. The *Smith* letter identified a particular amount as "unpaid accrued interest," which might at least place a debtor on inquiry notice that interest had accrued. *Id.*; *see also* Pl. Br. 7. *Smith* nevertheless found the disclosure insufficient because it did not reveal that interest would "continue to accrue on unpaid principal." 2008 WL 2885887 at *6.

Maruccis were dunned for the same debt some 10 months earlier, but for the lesser sum of $1,894.75. (*Id.* ¶18)

For these reasons, Counts III and IV of the complaint state a claim for violation of Section 1692g(a)(1) of the FDCPA.

### c. Violation of Section 1692e(2)(A) (Counts I, II)

Section 1692e of the FDCPA generally prohibits a debt collector from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. Section 1692e(2)(A) specifically prohibits "[t]he false representation of—(A) the character, amount, or legal status of any debt." 15 U.S.C. § 1692e(2)(A). Counts I and II of the complaint, based on the same factual allegations summarized above, allege a violation of Section 1692e(2)(A). The alleged false representation consists of the Letter's omission of any description of the accrual of interest or other charges. (Compl. ¶¶48–53, 57).

"A debt collection letter is deceptive where 'it can be reasonably read to have two or more different meanings, one of which is inaccurate.'" *Brown*, 464 F.3d at 455 (quoting *Wilson*, 225 F.3d at 354). In *Smith*, *supra*, the Court found that a collection letter was deceptive because it "did not state the date on which the outstanding interest amount was calculated, and did not explain that interest would continue to accrue on unpaid principal." 2008 WL 2885887 at *7. Therefore, "[t]he least sophisticated investor could have read the letter to mean that interest was calculated on the date the letter was written"; or "that the stated interest balance was static, and that payment of that amount, plus the principal balance, would satisfy the debt in full irrespective of when the payment was made." *Id.*

*Michalek v. ARS Nat. Sys., Inc.*, No. 3:11-CV-1374, 2011 WL 6180498 (M.D. Pa. Dec. 13, 2011), is similar. There, the court found that collection letters were susceptible of two different interpretation: "either

13

that: (a) the total amount due was calculated on the date the letter was written; or (b) that the total amount due was static, and the payment of that amount would satisfy the debt in full irrespective of when the payment was made." *Id.* at *1 (internal quotation and citation omitted). Comparing *Smith*, where the letter at least "hinted at the accrual of interest," the *Michalek* court observed that the letters before it were "even more likely to cause misunderstanding for the least sophisticated consumer." *Id.* at *4. Thus *Michalek* held that, because the "balance" could be "either a dynamic or static amount . . . [the letters] are subject to two different interpretations as to the accumulation of interest, rendering them deceptive under § 1692(e)(10)." *Id.* See also *Lukawski*, 2013 WL 4647482 at *1, 3 (citing *Michalek* and finding collection letter misleading even though a prior letter had disclosed that interest was accruing).

Accordingly, I hold that Counts I and II state a cause of action under 15 U.S.C. § 1692e(2)(A). This component of the motion to dismiss is denied.

### d. FDCPA disclosure requirements and "settlement letters"

In conclusion, I deal briefly with three interrelated arguments proffered by the defendants.

First, Cawley and the Fund contend that "nothing on the face of the Cawley Letter [] is 'false' with regard to the amount of the debt." (Def. Br. 14). The Letter, they say, misstated no fact, but merely omitted "language that interest had been or was still accruing" in order to minimize confusion and poise the matter for settlement. (*Id.* 13–16). Whether that interpretation of the facts would limit defendants' liability under the Act is dubious, *see infra*, but that legal issue is not critical. What is clear is that defendants' competing factual interpretation is not a proper basis for a Rule 12(b)(6) motion to dismiss.

Second, Cawley and the Fund contend that any notion that the "Letter falsely represents the debt as a static, unchanging amount when in fact it was accruing interest . . . is nothing more than a bizarre and idiosyncratic interpretation of the Cawley Letter." (Def. Reply Br. 8). It perhaps would be sufficient to require dismissal if one of two competing interpretations of a letter were so bizarre that even an unsophisticated debtor could not believe it. But the threshold of ambiguity is quite low; as *Smith* noted, the hypothetical least sophisticated consumer "is both gullible and naïve." 2008 WL 2885887 at *6 (citing *Brown*, 464 F.3d at 454). This Letter states, without significant elaboration: "Account Balance: $1,985.37." Because interest is not mentioned, a debtor would not be wholly unreasonable in concluding that a payment of $1,985.37 at any time would fully satisfy the debt. (Compl. Ex. A).[4]

Third, Cawley and the Fund argue that this letter does not fall under the Section 1692e(2) regime because it is "plainly a settlement letter." (Def. Br. 15). They contend, in effect, that this Letter is therefore not a disclosure of the debt at all; rather, it is an offer of "specific amounts that could be paid by specific dates" in settlement of the matter. (Def. Reply Br. 8 (citing *Kimmel v. Cavalry Portfolio Services, LLC*, No. 10-680, 2011 WL 3204841 at *7 (E.D. Pa. July 28, 2011))). In *Kimmel*, the Court found that a debt collector was not disclosing the full extent of the debt, but offering the plaintiff a settlement, *i.e.*, "the opportunity to pay a percentage of the outstanding balance as a way to satisfy the debt entirely." Under those circumstances, the Court held, "there was no risk

---

[4] I observe in passing that defendants must settle on an interpretation: interest either was accruing or it was not. If defendants' argument is that the letter is accurate because interest was not accruing, then defendants must account for their earlier argument that "'[e]ven the most unsophisticated consumer would understand that credit card debt accrues interest.'" (Def. Br. 12 (citing *Weiss*, 664 F. Supp. 2d at 217; *Adlam*, 2010 WL 1328958; *Goodrick*, 2013 WL 4419321)). But in any event these factual matters go beyond what is appropriate to consider on a motion to dismiss; the complaint plausibly alleges that interest was accruing, and that this was not disclosed in the Letter.

that Plaintiff would be liable for additional accrued interest" and so the failure of the debt collector to disclose the accrual of interest did not violate Section 1692e. *Kimmel*, 2011 WL 3204841 at *7 (distinguishing *Dragon v. I.C. System *397 Inc.*, 483 F. Supp. 2d 198, 201–03 (D. Conn. 2007), because the debt collector there was seeking the full amount due).

To that third contention, there are two answers, one factual and one legal.

The factual answer is that the Letter does not state or imply that the $1,985.37 "account balance" is a compromise figure; it is presented as the full amount due and owing. (Compl. Ex. A). The following section of the Letter then offers "affordable options." (*Id.*). The first is to deduct $496.34 from the balance and "[p]ay $1,489.03 no later than 09/19/12," at which point "[y]our account will be considered "Settled in Full." (*Id.*). The second is to deduct $297.81 from the balance and "[p]ay over 2 equal monthly installments of $843.78," the first being due "no later than 09/19/12." (*Id.*). Completion of this plan, too, will result in the account being considered "Settled in Full." (*Id.*). The third is not presented as a settlement, but as a "Balance in Full Payment Plan." (*Id.*). This third option is of "[m]ake affordable monthly payments," beginning "no later than 09/19/12." (*Id.*). Under this third option, the account is not considered "settled," but rather "'Paid in Full' once the account reaches a zero balance." (*Id.*). This third option does not disclose the amount or number of such monthly payments, whether interest will run, or what it will take for the account balance to reach zero. In short, these payment options do not factually resolve the ambiguity about the amount of the debt.

The legal answer is that I agree with *Jones, supra*, and with the majority of courts that have distinguished or rejected *Kimmel*. *Jones* explained simply that a debt collector cannot escape the Act's disclosure requirements by characterizing the communication as a settlement letter:

16

"[T]he statute requires that the notice state the 'amount of the debt,' not the amount necessary to settle the debt." *Jones*, 2012 WL 1204716 at *3. Indeed, without knowing the total amount of the debt, how could a debtor meaningfully evaluate the merits of such a settlement offer?

*Michalek, supra,* explicitly states that it will "decline[] to adopt the reasoning expressed in *Kimmel*, and will follow the lead of *Jones* in concluding that such offers do not immunize a debt collector's duty of clarity." 2011 WL 6180498 at *5. I find *Michalek*'s reasoning persuasive:

> The logic of *Smith* . . . does not apply to settlement offers, but to stated outstanding debt and the need for consumers to be aware that this debt may be dynamic or static. They are concerned with a consumer's inability to discern whether an amount owed may grow with time, regardless of whether offers to settle are on the table or not. . . . [T]his information is relevant in a consumer's payment calculus, especially when some debts must be paid at the expense of others. And, of course, the existence of settlement offers would be entirely irrelevant to these considerations for the many consumers who are unable to take advantage of them. Finally, even though these settlement offers are supposedly held open for a period of time, it is not made explicit that their expiration is contingent upon further accrual of interest. Instead, a "least sophisticated consumer" could be entitled to assume that such offers naturally expired, or that limited periods were designed to induce swift action.

*Id. See also Lukawski*, 2013 WL 4647482 at *4 (following *Michalek* and disagreeing with *Kimmel*).

Because the Letter could reasonably be read to have two different meanings, and because "settlement offers" do not immunize it from the FDCPA's requirements of accurate disclosure, the Complaint states a claim.

17

## IV. CONCLUSION

For the foregoing reasons, the motion to dismiss the Complaint is **denied**.

Dated: December 15, 2014

_____
Kevin McNulty
United States District Judge